**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AP 6 LLC,

     Plaintiff,

v.                     CASE NO.:  8:23-cv-01986-SDM-CPT

CITY OF INDIAN ROCKS BEACH,

     Defendant.

_____/

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, AP 6 LLC ("Plaintiff"), by and through its undersigned counsel, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, hereby files this Amended Complaint against the Defendant, CITY OF INDIAN ROCKS BEACH, a municipality of the State of Florida (the "City"),[1] and in support, alleges that the City's recently enacted Ordinance 2023-02 violates the United States and Florida Constitutions and is preempted by applicable Florida Statutes, and in support of the same Plaintiff states as follows:

---

[1] Plaintiff filed a Complaint on August 1, 2023, in the Sixth Circuit Court for Pinellas County, Florida. On September 5, 2023, the City removed the Complaint to this Court, and on September 12, 2023, the City filed a Motion to Dismiss and Motion to Strike Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) and 12(f).

## JURISDICTIONAL ALLEGATIONS

1.     This is an action for declaratory relief based upon the City's adoption of Ordinance No. 2023-02 (the "Ordinance"), in which the City attempts to regulate vacation rentals. A copy of the Ordinance is attached hereto as **Exhibit "A"**.

2.     Plaintiff is a Delaware limited liability company with its principal place of business in located at 600 N. Broad Street, Suite 5 #1113, Middletown, DE 19709, authorized to do business in Florida, and is in the business of managing short term vacation rentals within the City.

3.     Plaintiff manages short term rentals within the City and has rented to more than 1,500 renters since 2022.

4.     This case was originally filed on August 1, 2023, in the Sixth Circuit Court in and for Pinellas County, Florida.  That court had jurisdiction in this matter pursuant to Art. V(5)(b), Fla. Const., and Sections 26.012(2)(c), (3), and 86.011(b), Florida Statutes, as this is a claim seeking declaratory relief and raises claims otherwise not cognizable by the county courts.

5.     Venue was proper in Pinellas County pursuant to Section 47.011, Fla. Stat., as the actions and facts giving rise to the complaint occurred in Pinellas County, the real property owned and operated by the Plaintiff and otherwise impacted by the actions of the City is located within the City at 455 20th Ave., Indian Rocks Beach, Florida 33785 (the "Property"), in Pinellas County, and the City maintains its headquarters and principal place of business and is otherwise located in Pinellas County.

6.     On September 5, 2023, the City removed the case to this Court.  *See* Defendant's Notice of Removal (Doc. 1).  This Court has federal question jurisdiction under 28 U.S.C. § 1331 because four of the claims seek relief for alleged violations of the United States Constitution.   Venue is proper in this Court since this Court's jurisdiction encompasses that of the Sixth Judicial Circuit Court in and for Pinellas County, Florida.

7.     As there is an actual controversy between the parties, the Court can declare the rights and other legal relations between the parties pursuant to 28 U.S.C. § 2201.

## PARTIES

8.     The City is a state-chartered municipality in the State of Florida. The City is responsible for adopting, administering, and enforcing land development regulations for real property within the incorporated areas of the City.

9.     Plaintiff is a foreign limited liability company created and existing under Delaware law. Plaintiff maintains its principal office at 600 N. Broad Street, Suite 5 #1113, Middleton, Delaware, and is in the business of managing short term vacation rentals in the City.

10.     Plaintiff purchased the Property on November 16, 2021.

11.     Plaintiff manages its vacation rentals at the Property. Plaintiff rented to 719 renters in 2022 and 655 renters in 2023 (to present date). The Property contains five (5) bedrooms and is approximately 4,672 square feet.

12.     Plaintiff advertises the Property for short-term rentals and handles contracts including for the short-term rental of the Property. Approximately 46.97% of the Property's short term vacation rentals are for short-term rental groups of ten or more overnight occupants.

13.     Plaintiff has invested substantial amounts of time and money into maintaining and keeping the Property as a short-term vacation rental consistent with the City's historical regulations, practices, and procedures.

## GENERAL ALLEGATIONS

14.     On May 9, 2023, the City adopted the Ordinance on the second and final reading.

15.     Pursuant to Sec. 5, the Ordinance took effect "immediately upon adoption."

16.     Pursuant to Sec. 1, 18-201, the Ordinance applies "to all structures used as vacation rentals within the single family ("S"), medium density ("RM 2"), medium density duplex residential ("RM 1"), and the high-density commercial tourist ("CT") zoning districts," including the Property.

17.     The Property is zoned within a "Single Family" district of the City.

18.     Pursuant to its findings of fact, the Ordinance engages in the "regulation of vacation rentals," including "short term vacation rentals."

19.     The Ordinance defines "Occupant" as "any person who occupies a vacation rental. There is a rebuttal presumption that, when the dwelling unit occupied

is not the primary residence of the guest, the occupancy is transient." *See* Section 18-200.

20.     The Ordinance defines "Transient public lodging establishments" as

> [A]ny unit, group of units, dwelling, building, or group of buildings within a single complex of buildings which is rented to guests more than three (3) times in a calendar year for periods of less than thirty (30) days or one (1) calendar month, whichever is less, or which is advertised or held out to the public as a place regularly rented to guests.

*Id.*

21.     The Ordinance defines "Vacation rental" as "a vacation rental as defined by Florida Statutes § 509.242(1)(c)." *Id.*

22.     The Ordinance prohibits the number of occupants allowed in a vacation rental from exceeding a prescribed limit. Per the Ordinance, non "Owner Occupied" single-family-zoned subject vacation rental properties – which include the Property – "shall not exceed a maximum number of ten (10) overnight occupants" after two (2) years from date of the Ordinance's enactment and a maximum of twelve (12) occupants in between that time." Section 18-216.

23.     Additionally, pursuant to Section 18-204, of the Ordinance, the Property is required to receive a Vacation Rental Registration as provided in the Ordinance, which is defined as "the licensure or certification issued by the City of Indian Rocks Beach to a property owner authorizing the lawful operation of a transient public lodging establishment as a vacation rental within the City." Section 18-200. The Vacation Rental Registration scheme in the Ordinance includes a series of

requirements to provide a "responsible person" information, the number of bedrooms and location of parking spaces, a detailed exterior site plan, a detailed interior structural plan, ongoing compliance acknowledgments, a listing of the occupancy limit, a narrative parking plan, a copy of conduct rules that the owner privately adopts for the respective property, and a narrative statement setting forth how each owner "will ensure each guest is provided a copy of, and made to acknowledge, the city rules which must be disclosed to each guest." Section 18-206.

24.    The Ordinance also contains advertising prohibitions for vacation rentals, including prohibitions against the use of properties subject to the Ordinance "as an event venue for gatherings such as weddings, corporate retreats, or film productions, which are likely or intended to draw attendance in excess of the permissible occupancy," or parking in excess of what is permitted under the Ordinance. *See* Section 18-214(a).

25.    The Ordinance also requires vacation rental advertisements to include the statement:

> *You are vacationing in a residential area. Please be a good neighbor by keeping the noise to a respectful level during the day and night. Excessive and unreasonable noise can deprive neighbors of the peaceful enjoyment of their private property.*

(emphasis in the original). Section 18-214(b).

26.    The Ordinance also targets vacation rental units in imposing noise and quiet hours limitations, minimum required parking, permissible parking locations, solid waste, and temporary storage requirements. *See* Secs. 1, 18-217 and 18-218.

27.     The Ordinance also requires that a vacation rental owner that does not directly manage a vacation rental it owns, to designate "no more than two (2) designated responsible persons for each rentable unit" that must adhere to a series of requirements under the Ordinance, including the following:

> **Availability of Designated Responsible Person.** The responsible person(s) shall be available twenty-four (24) hours per day, seven (7) days a week, including holidays, for the purpose of promptly responding to complaints from city personnel, officers, or authorized agents regarding conduct or behavior of vacation rental occupants or alleged violations of these regulations, as well as communications from the sheriff's department, fire department, other emergency personnel, or by any other regulatory personnel of the city. This person must have authority to immediately address and take affirmative action, within one (1) hour of notice from the city or other relevant governmental agency, on violations concerning life-safety, noise, violent confrontations, trespassing, capacity limit violations, and parking violations. A record shall be kept by the city of the complaint and the responsible person's response.

> A rebuttable presumption of a violation of this article shall be established as against the owner and the primary designated responsible person, jointly and severally, in the event of an event or complaint where the city or its designated agents are unable to reach or secure a response from the owner and any of the designated responsible person(s) within the time period set forth in this section. An alleged violation can be rebutted by evidence of unanticipated exigency, an act of god, or other exceptional circumstances justifying the unavailability of each identified responsible person notwithstanding measures taken to ensure compliance.

> It shall be the sole responsibility of the property owner to appoint reliable responsible person(s) and to inform the city of his or her correct mailing address. Failure to do so shall not be a defense to a violation of this section.

> . . .

**Service.** Service of notice on the responsible person shall be deemed service of notice on the property owner, guest, occupant and violator.

**Exterior Posting**. The owner and responsible party shall ensure a non-illuminated sign, that is one square foot in size on each side, is prominently displayed in the frontage of a vacation rental property. The sign must identify the business tax receipt number for the property and the phone number of the primary designated responsible party. The sign's background shall be white in color, and the font shall be in black Times New Roman or Arial Font, and in no smaller than 144 Point typeface, or otherwise no smaller than an inch and a half ($1\,^1/_2$") in height. The sign must be constructed of weather resistant wood or plastic. An exterior posting shall not be required for properties within the city's CT zoning district.

**Interior Posting.** The owner or responsible person shall provide the city, and conspicuously post on the interior surface of the front door of the premises or on a wall within five feet of the front door, the name, address, and day/evening telephone numbers of the responsible person and be available twenty-four (24) hours per day, seven (7) days a week for the purpose of promptly responding to complaints regarding conduct or behavior of vacation rental occupants or alleged violations of these regulations. Any change in the responsible person shall require written notification to the city on forms provided by the city and in a manner promulgated by the city upon payment of the applicable fees.

**Response Time.** Complaints to the responsible person concerning violations by occupants of vacation rental units to this section shall be responded to within a reasonable time but in no instance greater than one (1) hour. A record shall be kept of the complaint and the manager's response, by the manager, for a period of at least two (2) years after the incident, a copy of which shall be made available to the city upon request.

**Redesignation.** An owner may change his or her designated responsible person(s). To change the designated agent or responsible person, the owner shall notify the city in writing of the name, contact information and other information required in this article for the new responsible person, along with a signed affidavit from the new responsible person acknowledging receipt of a copy of this article and agreeing to serve in this capacity and perform the duties set forth in this article. Any notice of violation or legal process which has been delivered or served upon the previous

PD.43263709.1

> responsible person, prior to the city's receipt of notice of change of the responsible person, shall be deemed effective service.
>
> **Legal Duties.** No property owner shall designate as a responsible person any person who does not expressly comply with the provisions of this article. The property owner and the responsible person shall jointly and severally be deemed to be the "violator" of this article as the term is used in Florida Statutes § 162.06. By designating a responsible person, a vacation rental owner is deemed to agree that service of notice on the responsible person at the address listed by the owner shall be deemed service of notice on the owner, responsible person, and violating guest. Copies of all code violation notices shall also be provided to the property owner in the manner set forth in Florida Statutes § 162.12. If, alternatively, a citation is issued by the code enforcement officer or deputy, the citation process set forth in Florida Statutes § 162.21.

(emphasis in the original). *See* Section 18-214(b).

28.     Given the requirements set forth above by the Ordinance, including as described in paragraphs 17-26 herein (the "Imposed Burdens"), the Ordinance substantially burdens owners of short-term vacation rental property owners in the City, such as Plaintiff – who have lawfully operated their historically permissible vacation rentals – by such a drastic increase in compliance costs and restrictions being targeted upon previously compliant vacation rentals, such as the Property. Effectively, the frequency and duration of future vacation rentals for the Property will be severely curtailed, if not eliminated, directly harming the value of the Property and its vacation rental business.

29.     These changes to the City's existing regulations, policies, and procedures constitute broad and substantive changes.

30.     The City attempts to use purported findings of fact to support these substantive changes to further the City's interest in the health, safety, and well-being of its residents.  Instead, however, the totality of the requirements in the Ordinance creates an unworkable, arbitrary, and inundated scheme which prohibits certain properties from reaching its investment backed purposes indefinitely.

### COUNT I
### DECLARATORY JUDGMENT
### AS-APPLIED TAKINGS CLAIM

31.     Plaintiff reasserts the allegations contained in Paragraphs 1 through 30 above as though fully set forth herein.

32.     The United States and Florida Constitutions protects individual property rights by prohibiting the governmental taking of private property for public use without payment of full compensation.  Amendment 5, U.S. Const.; Article X, § 6(a), Fla. Const.

33.     When the government acts for the benefit of the public as a whole, a select group of citizens should not bear the expense.  Yet, here, Plaintiff and a few other similarly situated property owners bear the burden of the Ordinance, without any resulting benefit.

34.     On May 9, 2023, the Ordinance became effective immediately to Plaintiff's Property.

35.     Currently, Plaintiff's Property is within the "vesting period" under Section 18-216(b), which subjects its maximum overnight occupancy to twelve overnight occupants for two years, provided all other requirements are met.

36.     Pursuant to Section 18-216(b), after the vesting period of two years elapses, on May 9, 2025, Plaintiff's Property will have a maximum overnight occupancy of ten overnight occupants. Moreover, Section 18-216(b)(4) requires immediate effect of the maximum overnight occupancy of ten overnight occupants upon a sale of the vacation rental.

37.     This claim is ripe for review because the regulation is currently effective on the Property, and creates restrictions that have caused an actual controversy.

38.     The maximum overnight occupancy requirements of the Ordinance create a substantial deprivation of Plaintiff's economic use and reasonable investment-backed expectations.

39.     The Property was purchased on November 16, 2021, for the primary and exclusive purpose of being a continuous short term vacation rental.

40.     On the date of the Property's purchase, Indian Rocks Beach Ordinance No. 2018-01 ("2018 Ordinance") was effective.

41.     The 2018 Ordinance did not include any maximum occupancy restrictions for any short-term vacation rental.

42.     Notwithstanding the 2018 Ordinance effective on the date of Plaintiff's purchase of the Property, the City's 2016 Comprehensive Plan ("Plan")[2] adopted by the Indian Rocks Beach City Commission was also effective.

---

[2]  City of Indian Rocks Beach Comprehensive Plan, http://www.indian-rocks-beach.com/docs/COMP%20PLAN-2016.pdf (last visited Oct. 3, 2023).

43. The Plan similarly did not include any restrictions on a short-term vacation rental owner's ability to rent its property for profit.

44. Rather, the Plan included several sections that demonstrated its intent to further progress the rental market in the area and deferred much of this market to property owners in the private sector.

45. For example, on page 7/296, the Plan states: "[s]ince the City of Indian Rocks Beach is not directly involved in the building and maintenance of housing, the responsibility lies with the private sector for both owner-occupied and rental housing. By ordinance, the city has adopted the *Southern Standard Building Code* and *Housing Code* . . . **but beyond these guidelines, its role is limited. The private sector remains the main provider and preserver of the housing stock**." (emphasis added).

46. On page 12/296, under "Future Land Use" and "Goal 1" of the Plan, it states: "Protecting private property rights, in accordance with established law, **especially for municipal actions not classified as a regulatory taking**." (emphasis added).

47. On page 29/296, the Plan states: "**Existing residential land uses shall be protected**, through provisions contained in the land development regulations, from the encroachment of incompatible activities."

48. On page 43/296, a policy purpose of the Plan is to "[e]ncourage both ownership and **rental opportunities for all types of housing**." (emphasis added).

49. Neither the 2018 Ordinance nor the Plan included notations, provisions, or even working notes/future ideas or working plans that expressly, or even implicitly,

PD.43263709.1

could put Plaintiff – or others similarly situated like Plaintiff – on notice that a change to the short-term vacation rental market would occur.

50. In fact, the *Southern Standard Building Code* and *Housing Code*, which are expressly adopted by the City for the health and safety of its residents, permit the Property to have a higher occupancy than ten or twelve overnight occupants.

51. On the date of the Property's purchase, the City did not adopt more stringent code standards to properties within its jurisdiction. The 2018 Ordinance and the Plan were the operative standards.

52. Considering Ordinance 2018, the Plan, and the relevant codes outlined above, the Property was purchased by Plaintiff with the intent to rent to short term rental groups with more than twelve or ten overnight occupants.

53. In 2022, approximately 719 short term renters rented the Property.

54. In 2023, before the enforcement of the Ordinance, approximately 655 short term renters rented the Property.

55. Since the Property began being rented to short-term vacation renters, approximately 25.37% of Plaintiff's net revenue came from rentals of greater than ten (10) but less than or equal to twelve (12) short term vacation rental groups.

56. Since the Property began being rented to short-term vacation renters, approximately 21.60% of Plaintiff's net revenue came from rentals of greater than twelve short term vacation rental groups.

57. The Ordinance directly prevents the Property from being rented to groups larger than twelve (during the vesting period) or ten (after the vesting period) overnight

occupants, which has substantially diminished the value of the Property as a short-term vacation rental.

58.     Because of the Ordinance, the primary economic use of Plaintiff's property has been, and will be, significantly diminished, notably by the Ordinance's restriction on the Property's use.

59.     Because of the Ordinance, Plaintiff's reasonable investment backed expectations of renting the Property are substantially diminished.

60.     Indeed, these reasonable investment backed expectations of Plaintiff were generally acknowledged by City Attorney Randy Mora during an April 11, 2023, City of Indian Rocks Beach Regular City Commission Meeting:

> City Attorney Mora stated he had received renewed interest last week in the legislative impact of the Bert J. Harris Jr. Private Property Act, memorialized in Florida Statute 70.001. There has been some suggestion that the Florida Statute was not given its due attention during this process. He would have to object to that representation if only to say he has tacitly and explicitly been referring to the Bert Harris Act since 2017. **He had advised the city commission that potential claims exist with the parties' reasonable investment-backed expectations.**[3]

61.     Lastly, the character of the Ordinance also directly impacts larger short term vacation rental properties because its occupancy use restriction applies only towards larger properties that have the ability to occupy more than twelve or ten persons.

---

[3] *Minutes – April 11, 2023 City of Indian Rocks Beach Regular City of Commission Meeting* at 6/40 (Jun. 13 2023), <u>*04-11-2023 CCM Minutes-WebsitePost.pdf (indian-rocks-beach.com)</u> (emphasis added).

62. The practical and realistic impact of the Ordinance in targeting these larger properties by constricting its use can and does diminish the value of properties in the City.[4]

63. This macroeconomic effect has, and will continue to, substantially reduce the value of property tax revenue for the City, which according to the 2024 General Fund Revenue Chart from the City's September 20, 2023 Agenda,[5] accounts for 60.50% of the City's growth income.

64. Considering the presumed findings of fact supporting the Ordinance, the benefit bestowed upon the public is solely at the expense of larger single-family home property owners in the City who purchased the homes for the purpose of renting the properties to larger rental groups.

65. Therefore, the character of the Ordinance creates an imminent and continuous blockage for rentals to larger groups, injuring Plaintiff.

66. Plaintiff requests the impaneling of a jury of 12 people.

**WHEREFORE**, Plaintiff, AP 6 LLC, respectfully requests that this Court enter judgment against Defendant, the City of Indian Rocks Beach, find that a taking

---

[4] *See* Harvard Business Review, *Research: Restricting Airbnb Rentals Reduces Development*, (Nov. 17, 2021), *Reduces Development*, (Nov. 17, 2021), https://hbr.org/2021/11/research-restricting-airbnb-rentals-reduces-development#:~:text=Since%20STR%20regulations%20decrease%20the,by%20%2440%20million%20per%20year ("Since STR regulations decrease the number of permit applications which in turn stymies growth in property values, we conservatively estimate that for the 15 cities we studied, STR restrictions reduced property values by a total of $2.8 billion and tax revenues by $40 million per year.").

[5] *Agenda City of Indian Rocks Beach Special City Commission Meeting* at 23/63 (Sep. 15, 2023), 09-20-2023 SCCM Agenda Packet_Budget.pdf (indian-rocks-beach.com).

PD.43263709.1

occurred on the date the Ordinance became effective on May 9, 2023, and for any other and further relief this Court deems just and proper.

**COUNT II**
**DECLARATORY RELIEF**
**FREEDOM OF EXPRESSION**

67.     Plaintiff reasserts the allegations contained in Paragraphs 1 through 30 above as though fully set forth herein.

68.     Section 18-214 of the Ordinance relates to advertising restrictions for vacation rentals.

69.     Under Section 18-214(b) the Ordinance requires the following statement to be included in any advertising of a vacation rental:

> **"You are vacationing in a residential area. Please be a good neighbor by keeping the noise to a respectful level during the day and night. Excessive and unreasonable noise can deprive neighbors of the peaceful enjoyment of their private property."**

("Statement"). Under Section 18-214(c), any advertisement for a vacation rental that does not contain the above statement is subject to a penalty.

70.     Under Section 18-217(c)(4), the same statement is required to be posted "in English, using a non-script font such as times new roman or arial…in a font no smaller than 14-point in size" on the interior front door of the vacation rental (or near the front door) *and* on any exterior lounges, patios, porches and patios.  A separate notice may also be required that vacation rentals post "[n]otice of the need for the peace and quiet of neighborhood residents, especially between the quiet hours of 10 p.m. and 7 a.m."

71.     These penalties include fines, suspension of the property owner's vacation rental registration for the property or unit at issue, and revocation of a property owner's vacation rental registration.

72.     Under Section 18-202(d), a revoked rental registration for a specific unit or property shall not be re-issued for the same unit or property to the property owner who had his/her registration revoked, or to any entity in which he/she has any financial or ownership interest.

73.     The required Statement is not the speech that Plaintiff would otherwise say, and Plaintiff does not consent; the forced Statement is compulsion of property owners to declare a belief and affirm an attitude of mind.

74.     The required Statement is not purely factual and uncontroversial speech. It does not seek to clear up any misunderstanding otherwise present in an advertisement.

75.     The required Statement does not directly advance substantial governmental ends, is more restrictive than necessary, and is unduly burdensome.

76.     Therefore, because the City coerces speech upon property owners subject to the Ordinance, Section 18-214(b) and Section 18-217(c)(4) are unconstitutional.

77.     Moreover, Section 18-214(a) also prohibits the advertising of vacation rentals as an "event venue for gatherings such as weddings, corporate retreats, or film productions, which are likely or intended to draw attendance in excess" of the occupancy limits or parking regulations.  This restriction does not directly advance

substantial governmental ends, is more restrictive than necessary, and is unduly burdensome.

78.     Section 18-214(a) directly targets the content of lawful non-misleading speech and forbids a speaker from expressing his message.  Yet, the City has no evidence that such a restriction will serve its interests nor does the City have evidence that the restriction is not more extensive than necessary to serve its interests.

**WHEREFORE**, Plaintiff, AP 6 LLC, respectfully requests that this Court enter judgment against Defendant, the City of Indian Rocks Beach, issue an Order declaring that the Ordinance's speech provisions violate Article I, § 4 of the Florida Constitution and/or Amendment I of the U.S. Constitution, and are therefore, invalid, and unenforceable.

**COUNT III**
**DECLARATORY RELIEF**
**EQUAL PROTECTION**

79.     Plaintiff reasserts the allegations contained in Paragraphs 1 through 30 above as though fully set forth herein.

80.     This is an action for a declaratory judgment that the City has acted in violation of the equal protection guarantees of the United States and Florida Constitutions due to its arbitrary occupancy limits on short term rental units, which has created an actual controversy between the parties.

81.     Through the Ordinance's occupancy limit, the City intentionally treats similarly situated groups dissimilarly, without a rational basis for the difference in treatment.

PD.43263709.1

82.     In particular, short-term vacation rental units situated in the single family ("S"), medium density ("RM 2"), and medium density duplex residential ("RM 1") zoning districts which have, prior to the Ordinance, regularly rented to a maximum of ten overnight occupants, are treated dissimilarly (and better) than those short-term vacation rental units situated in the single family ("S"), medium density ("RM 2"), and medium density duplex residential ("RM 1") zoning districts which have, prior to the Ordinance, regularly rented to more than ten overnight occupants.

83.     In relevant part, the Ordinance commands that, in the single family ("S"), medium density ("RM 2"), and medium density duplex residential ("RM 1") zoning districts, "[r]egardless of the number of bedrooms in or on the property, the overnight occupancy [for vacation rental units] shall not exceed a maximum number of ten (10) overnight occupants." The City intentionally, and arbitrarily, selected this number, which has severe impacts on those on the wrong end of the City's whimsical choice.

84.     During the January 24, 2023, City Commission Work Session, Commissioner Houseberg stated his preference for a maximum capacity of 10. Commissioner McCall favored simply two persons per bedroom, plus two. Commissioner Hanna selected eight as the right number. Commissioner Bond said he would like to see a little higher than ten as the limit, and that it didn't make sense to him why there would be a cap that constricts someone beyond the number of bedrooms an owner has. One thing is clear from this exchange—the City arbitrarily picked the occupancy limit.

PD.43263709.1

85.     The equal protection guarantees of the United States and Florida Constitutions do not simply ensure some equal protection related to suspect classes, but instead these guarantees require that every governmental decision and line drawing decision must have a rational basis. The City violated this cardinal rule by its irrational and wholly arbitrary selection of the number ten (10) as its favored number for an occupancy limit.

86.     The disfavored property owners have been harmed by the City's selection of the number ten (10) and this number was not based on social science, science, or even common sense. Instead, the selection of the number ten (10) as the limit was based on the arbitrary preference of five City Commissioners.

87.     The maximum occupancy limit imposed by the Ordinance is too far attenuated from the City's stated goals and is vastly underinclusive in its application. For example, it is entirely possible that a group of ten persons at a short-term rental can cause a disturbance, the prevention of which is ostensibly the Government's interest.

88.     In contrast to the City's arbitrary selection of the number ten (10) as its occupancy limit stands the applicable Building and Fire Codes, which limit the maximum occupancy at a property to a reasonable number based on *that* property and a number that is necessary to maintain safety.

89.     Because the City has unlawfully isolated Plaintiff and similarly situated property owners for distinct and harsher regulation, the City has created a circumstance where Plaintiff will be unable to rent its property as Plaintiff intends.

PD.43263709.1

90.     The equal protection guarantees of the United States and Florida Constitutions prohibit the City's selection of its occupancy restriction.   Therefore, this Court should declare such restriction unconstitutional.

**WHEREFORE**, Plaintiff, AP 6 LLC, respectfully requests that this Court enter judgment against Defendant, the City of Indian Rocks Beach, issue an Order declaring that the Ordinance's occupancy limits violates Article I, § 2 of the Florida Constitution and/or Amendment XIV of the U.S. Constitution, and is therefore, invalid, and unenforceable.

**COUNT IV**
**DECLARATORY RELIEF**
**PROCEDURAL DUE PROCESS/VAGUENESS**

91.     Plaintiff reasserts the allegations contained in Paragraphs 1 through 30 above as though fully set forth herein.

92.     The Fourteenth Amendment's Due Process Clause guarantees procedural due process.  A governmental actor must follow certain procedures before they may deprive a person of a protected life, liberty, or notably here, property interest.

93.     A statute or ordinance is void for vagueness when, because of its imprecision, it fails to give notice of what conduct is prohibited.

94.     Ordinances, particularly those which carry the threat of civil sanctions, must provide a person of ordinary intelligence with fair notice of what constitutes forbidden conduct.  A municipality may not adopt an ordinance which, by its vague wording, leaves persons to necessarily guess at its meaning.

95.     Several sections of the Ordinance are not clearly defined.

96. For example, the Ordinance provides for maximum overnight occupancy under Section 18-216(a)(1), (2).

97. Section 18-216(a)(1), (2) provides:

(a) **Generally.** The maximum overnight occupancy of a vacation rental unit shall be stated in the vacation rental form, and shall be limited as follows:

(1) In the CT zoning district, the maximum overnight occupancy shall be limited to two (2) persons per bedroom, **plus two (2) additional persons may sleep in a common area**. Regardless of the number of bedrooms in or on the property, the overnight occupancy shall not exceed a maximum number of twelve (12) overnight occupants.

(2) In the single family ("S"), medium density ("RM 2"), and medium density duplex residential ("RM 1"), the maximum overnight occupancy shall be limited to two (2) persons per bedroom, plus two (2) additional persons may sleep in a **common area**. Regardless of the number of bedrooms in or on the property, the overnight occupancy shall not exceed a maximum number of ten (10) overnight occupants.

(emphasis added).

98. There are no definitions in the Ordinance about what qualifies as a "common area" of a vacation rental unit. The term "common area" is only referenced twice in the entire Ordinance, in Section 18-216(a)(1), and (2).

99. There are no criteria in the Ordinance for a person of ordinary intelligence to apply or to determine what would constitute a "common area" of a property.

100. Section 18-216 does not expressly state that only one "common area" in a property may be used for overnight occupancy of up to two additional persons.

101. The Ordinance can reasonably be interpreted to include more than one "common area," thus allowing two (2) overnight occupants to sleep in each "common area.".

102. If the City intended the Ordinance to mean only two overnight occupants per "common area," express language could have been used when Section 18-216(a) to specifically designate that maximum limit.

103. This ambiguity is directly corroborated by public records relative to this section of the Ordinance on January 24, 2023, where City Attorney Randy Mora stated that the Ordinance's occupancy limits, "will not be by room. The way the regulation is written is 2 per bedroom, plus 2. **Where they sleep is beside the point**." (emphasis added).

104. This vagueness, specifically on the point of "common area," can create situations that contradict the entire purpose underlying the Ordinance's creation.

105. For example, a smaller square footage single-family home with one bedroom, but includes several areas within the property that could reasonably be considered a "common area," such as a living room, kitchen, and dining room, could allow for eight overnight occupants pursuant to Section 18-216. This situation – i.e. permitting a large group in a smaller sized home with only one true bedroom – would contradict the City's alleged purpose in enacting the Ordinance because a group of eight occupants in a smaller single-family home poses a higher risk of creating safety, noise, and other disturbances/concerns in the City than other homes that could

reasonably accommodate more than 10 overnight occupants under relevant building and life safety code.

106.    Moreover, the vagueness created by the Ordinance's reference to "common area" can allow uses of certain properties that are incompatible with residential uses and run afoul of the Florida Building Code and Life Safety Code.

107.    Section 18-204 of the Ordinance requires a property owner subject to the Ordinance to be in "full compliance" with the "most recently adopted versions" of the City Code, Florida Statutes Chapter 509, the Florida Building Code, the Florida Administrative Code, and the Florida Fire Prevention Code.

108.    Section 18-206(c)(10) requires property owners subject to the Ordinance to abide by and agree to "initial and ongoing compliance" with the Ordinance's strictures and "all other city codes and federal, including FEMA requirements, as well as state and county laws which are applicable to the owner's ownership, maintenance, repair, modification, and use of the vacation rental property."

109.    As written, Section 18-204 and 18-206(c)(10) requires compliance with all current and future amended and created federal, state, court, and City law and regulations.

110.    Prospectively, Section 18-204 and 18-206(c)(10) requires property owners subject to the Ordinance to be aware of, make a valid legal conclusion through its interpretation, and comply with a voluminous set of evolving statutes, legislative enactments, case law, and all other forms of legal set of standards that have not been enacted or decided to date.

111.   This requires property owners to be subject to standards and requirements that are not clearly defined and fails to give adequate notice of what conduct is prohibited, because such prohibited conduct *has not been established yet by law*.

112.   Section 18-206(c)(7) and (c)(11) also require an affirmation by the property owner of circumstances over which the property owner does not have complete control.  Therefore, no property owner could certify with certainty that there will be compliance in the manner demanded by the Ordinance.  Due process requires that a person only be punished for what he has control over, and a person should not be forced to affirm a fact over which he does not have control.

113.   Currently, without looking to the future, Section 18-204 and 18-206(c)(10) requires property owners to adhere to a vague and overbroad set of standards that the Ordinance does not clearly define.

114.   Generally, subject to certain exceptions, most properties are subject to building and life safety codes at the time such property is constructed.

115.   The Ordinance requires property owners subject to the Ordinance, including Plaintiff, to guess at what versions of new code with which it may be required to comply.

116.   These set of standards will also be difficult, if not impossible, for the special magistrate to properly enforce as laws, standards, codes, and any other forms of legal strictures are enacted and possibly applicable to certain properties.

117.    This creates a set of overbroad, vague, and ambiguous set of standards that are continuously changing, requires legal and expert interpretation, and subject to dispute even after detailed consideration and evaluation by a qualified expert and/or attorney.

118.    Under Section 18-202, the Ordinance provides a variety of enforcement mechanisms, including code enforcement fines, a civil citation system, suspension, and permanent revocation of a property owner's vacation rental registration.

119.    As such, the Ordinance causes a burdensome, arbitrary, and unduly difficult set of strictures that makes it impossible or extremely difficult for property owners subject to the Ordinance to fully comply, resulting in inevitably violations, suspensions, and permanent revocation of its license to operate a vacation rental.

120.    These lack of standards to properly enforce the contents of the Ordinance were acknowledged by Captain Leiner during an April 11, 2023, City of Indian Rocks Beach Regular City Commission Meeting.

121.    Captain Leiner raised concern over enforcement of differentiating whether a property contains residents or short-term vacation renters.[6]

122.    Captain Leiner made several statements that are included in the City's Meeting Meetings:

> The first test, can the sheriff's office physically do it?  **The second test is the equitable application of it, and that one is difficult.  It is easily defined as an impartial application of it.  However, it draws him into the city attorney's area**.

---

[6] *Minutes – April 11, 2023 City of Indian Rocks Beach Regular City of Commission Meeting* at 7/40 (Jun. 13 2023), *04-11-2023 CCM Minutes-WebsitePost.pdf (indian-rocks-beach.com) (emphasis added).

For example, it might be difficult for deputies to differentiate between residents and short-term vacation rentals concerning pools and hot tubs and who can and cannot be there after 10:00 p.m.

. . .

**Captain Leiner stated it would be difficult to explain to deputies how to figure out if a vehicle parked on a roadway is related to somebody visiting a full-time resident or a short-term rental.**

. . .

**Captain Leiner stated parking would also be difficult to enforce**.

*Minutes – April 11, 2023 City of Indian Rocks Beach Regular City of Commission Meeting* at 7/40 (Jun. 13 2023), *04-11-2023 CCM Minutes-WebsitePost.pdf (indian-rocks-beach.com) (emphasis added).

123. Plaintiff is entitled to a declaration that the Ordinance is unconstitutionally void for vagueness.

124. There exists a current dispute and controversy between Plaintiffs and the City as to whether the Ordinance as adopted by the City is void for vagueness.

**WHEREFORE**, Plaintiff, AP 6 LLC, respectfully requests that this Court enter judgment against Defendant, the City of Indian Rocks Beach, issue an Order declaring that the Ordinance is unconstitutionally vague, and is therefore, invalid, and unenforceable.

## COUNT V
## DECLARATORY JUDGMENT
## PREEMPTION UNDER § 509.032(7) AND § 162.09, FLORIDA STATUTES

125.    Plaintiff reasserts the allegations contained in Paragraphs 1 through 30 above as though fully set forth herein.

126.    Florida law preempts the regulation of short-term rentals:

> (a) The regulation of **public lodging establishments** and public food service establishments, including, but not limited to, sanitation standards, inspections, training and testing of personnel, and matters related to the nutritional content and marketing of foods offered in such establishments, **is preempted to the state**. This paragraph does not preempt the authority of a local government or local enforcement district to conduct inspections of public lodging and public food service establishments for compliance with the Florida Building Code and the Florida Fire Prevention Code, pursuant to ss. 553.80 and 633.206.

> (b) A **local law, ordinance, or regulation may not prohibit vacation rentals or regulate the duration or frequency of rental of vacation rentals**. This paragraph does not apply to any local law, ordinance, or regulation adopted on or before June 1, 2011.

> (c) Paragraph (b) does not apply to any local law, ordinance, or regulation exclusively relating to property valuation as a criterion for vacation rental if the local law, ordinance, or regulation is required to be approved by the state land planning agency pursuant to an area of critical state concern designation.

(emphasis added). *See* § 509.032(7), Florida Statutes.

127.    § 509.013(4)(a), Florida Statutes, provides that "public lodging establishment" includes a "transient public lodging establishment," which is defined as:

> [A]ny unit, group of units, dwelling, building, or group of buildings within a single complex which is rented to guests more than three times in a calendar year for periods of less than 30 days or 1 calendar month, whichever is less, or which is

> advertised and held out to the public as a place regularly rented
> to guests.

§ 509.013(4)(a)(1), Florida Statutes.

128.   § 509.242(1)(c), Florida Statutes, provides that a "vacation rental" is "any unit or group of units in a condominium or cooperative or any individually or collectively owned single-family, two-family, three-family, or four-family house or dwelling unit that is also a transient public lodging establishment but that is not a timeshare project." This is the same definition provided under the Ordinance as mentioned above.

129.   Here, the Ordinance is preempted by the provisions of Chapter 509, Florida Statutes as the Property is a "public lodging establishment" and a "vacation rental" insofar as the Ordinance regulates any item beyond the City's ability "to conduct inspections of public lodging and public food service establishments for compliance with the Florida Building Code and the Florida Fire Prevention Code." *See* § 509.032(7), Florida Statutes.

130.   The Ordinance therefore improperly regulates items in the Imposed Burdens to the extent that the Imposed Burdens are not permitted under § 509.032(7)(a), Florida Statutes.

131.   Additionally, the Ordinance in its entirety stands as an obstacle to the execution of the full purposes of § 509.032(7)(b), Florida Statutes. The Ordinance improperly regulates the "duration or frequency" of vacation rentals on the Property considering the restrictions imposed by the Imposed Burdens.

132.    These restrictions on rental properties in the City, such as Plaintiff's, prevent Plaintiff from being able to rent its Property to the fullest extent permitted under applicable building code, specifically to more than 10 overnight occupants.

133.    The Ordinance, through its application, will effectively reduce the frequency of vacation rentals in Indian Rocks Beach, which is the goal of the Ordinance.

134.    The Ordinance, through its application, will effectively reduce the duration of Plaintiff's ability to rent the Property.  Some renters will change to longer-term rentals in order to escape the Imposed Burdens of the Ordinance.

135.    Thus, the Ordinance in its application to larger vacation rental properties within the City, like Plaintiff's, creates a *de facto* regulation for the *frequency* in which these properties can be rented.

136.    The Ordinance's occupancy restriction will decrease the frequency of vacation rentals.

137.    It is far less likely a larger home with 5 plus bedrooms will be rented by groups of ten or less.  Therefore, the Ordinance implicitly regulates the frequency and duration that these larger homes can be rented.  Therefore, the Ordinance stands as an obstacle to the full purposes of § 509.032(7)(b) which is to prohibit restrictions on the frequency and duration of vacation rentals.

138.    Additionally, under Section 18-202, the Ordinance permits the City to permanently revoke a property owner's vacation rental registration.

139.    A vacation rental registration is required for a property owner to rent its property as a short-term vacation rental.

140.    Therefore, this ability created by the Ordinance afforded to the City to permanently revoke a property owner's ability to rent its property is prohibited by§ 509.032(7)(b), Florida Statutes.    Further, if the City is delayed in conducting an inspection, a property owner's ability to rent is temporarily suspended, which is yet another obstacle to the full purposes of § 509.032(7)(b).

141.    In addition to running afoul of § 509.32(7)(b) by allowing for a prohibition of short-term vacation rentals, this enforcement mechanism runs afoul of Section 162.09, Florida Statutes, which only provides for enforcement by certain proscribed methods, including limited fines.

142.    The City has opted-in to the enforcement mechanisms of § 162.09 and it has specifically done so with regards to this Ordinance.  *See* 18-202(b) (directing the Magistrate to adhere to the "limitations set forth in Fla. Stat. § 162.09").

143.    Yet, § 162.09 does not provide for the rental registration suspension or revocation provided in Section 18-202(c-d).   Moreover, unlike the rights that § 162.06(2) provide (including the right to correct the alleged violation to avoid the imposition of penalties and punishments), the Ordinance is retrospective and authorizes penalties without prior notice of violation or warning.  Therefore, Section 18-202(c-d) is preempted by § 162.09.

144. There exists a current dispute and controversy between Plaintiff and the City as to the application of the preemption of the Ordinance by Florida Statutes, including the aforementioned.

145. Plaintiff is entitled to a judgment in its favor regarding the preemption of the City's Ordinance by Florida law.

146. Despite the preemption of the Ordinance by Florida law, the Ordinance, including through the Imposed Burdens, is a source of direct and continuing harm to Plaintiff.

**WHEREFORE**, Plaintiff, AP 6 LLC, respectfully requests that this Court issue an Order declaring that the applicable provisions of the Ordinance, including the Imposed Burdens, are preempted by state law and are therefore invalid and unenforceable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted on this 3rd day of October 2023.

**PHELPS DUNBAR LLP**

*/s/ Rhett C. Parker*
Rhett C. Parker | FBN 0092505
Evan P. Dahdah | FBN 1024893
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602-5315
Ph: (813) 472-7550; Fax: (813) 472-7570
rhett.parker@phelps.com
evan.dahdah@phelps.com
jill.reeves@phelps.com
brooke.rollins@phelps.com
*Attorneys for AP 6 LLC*