AP 6 LLC,

      Plaintiff,

v.

      CIVIL ACTION NO. 8:23-cv-01986-SDM-CPT

CITY OF INDIAN ROCKS BEACH,

      Defendant.

## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, City of Indian Rocks Beach, a municipality of the State of Florida ("CITY"), pursuant to Fed.R.Civ.P. 12(b)(6), hereby moves to dismiss PLAINTIFF's Amended Complaint, and states:

### Relief Requested and Identification of Basis for Relief

1.     The Amended Complaint for Declaratory Relief (Doc. 17) contains five counts challenging the validity of a CITY ordinance regulating the operation of short term rentals.[1] The CITY requests this Court dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

### Memorandum of Law

2.     Each of the five counts seeks declaratory relief. (See Doc. 17,

---

[1] PLAINTIFF filed its Amended Complaint in response to the CITY's Motion to Dismiss and Motion to Strike. (Doc. 11.)

generally.)  In order to state a claim for declaratory relief under Florida law, a party must show:

> [T]hat there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court . . . and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

Meadows Community Association, Inc. v. Russell-Tutty, 928 So.2d 1276, 1279 (Fla. 2d DCA 2006) (citing to May v. Holley, 59 So.2d 636, 639 (Fla. 1952)).

3.      The Federal Declaratory Judgment Act also requires "an actual controversy."  Blue Heron Beach Resort Developer, LLC v. Branch Banking & Trust Co., No. 6:13-cv-372-Orl-19TBS, 2013 WL 12161819,  at *10 (M.D. Fla. Aug. 2, 2013) (citing Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir. 1985)) (internal quotation marks omitted).  The substantial controversy between the parties having adverse legal interests must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Blue Heron Beach Resort Developer, 2013 WL 12161819, at *10 (citing Maryland Casualty Co. v. City of Birmingham, 312 U.S. 270, 273 (1941)).

4.      Here, while PLAINTIFF alleges a controversy, (Doc. 17, ¶ 7), as shown

below, as a matter of law, there is no actual controversy. Accordingly, the Court should dismiss Counts I-V.

**Count I**

5. Count I is titled "Declaratory Judgment As-Applied Takings Claim." (Doc. 17 at 10.) The gravamen is CITY Ordinance 2023-02 ("Ordinance") has effected a taking of PLAINTIFF's property at 455 20th Avenue, Indian Rocks Beach, Florida 33785 ("Property"). (See Doc. 17 at 10-16, generally.) Stated more formally, PLAINTIFF seeks to allege an-as applied partial regulatory taking of its Property, but has now dropped the "inverse condemnation" denomination that was in the title of Count I of its Complaint. (Doc. 1-3 at 8.)

6. PLAINTIFF fails, however, to state a claim for an as-applied partial regulatory taking upon which relief can be granted.

7. The test for an-as applied partial regulatory taking claim is set forth in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 124 (1978). In general, the elements that must be pled are (1) the economic impact of the regulation on the plaintiff; (2) the extent of interference with distinct investment-backed expectations; and (3) the character of the governmental action. Id.; Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (citing Penn Central). PLAINTIFF failed to sufficiently plead ultimate facts demonstrating these elements.

8.     As to the first element, Count I fails to allege the sort of economic impact that amounts to a taking.  PLAINTIFF alleges:

> a. "Effectively, the frequency and duration of future vacation rentals . . . will be severely curtailed, if not eliminated, directly harming the value of the Property and its vacation rental business." (Doc. 17, ¶ 28.)
>
> b. "The maximum overnight occupancy requirements of the Ordinance create a substantial deprivation of Plaintiff's economic use and reasonable investment-backed expectations." (Id., ¶ 38.)
>
> c. "The Ordinance directly prevents the Property from being rented to groups larger than twelve (during the vesting period) or ten (after the vesting period) overnight occupants, which has substantially diminished the value of the Property as a short-term vacation rental." (Id., ¶ 57.)
>
> d. "Because of the Ordinance, the primary economic use of [the] [P]roperty has been, and will be, significantly diminished, notably by the Ordinance's restriction on the Property's use." (Id., ¶ 58.)
>
> e. "Because of the Ordinance, Plaintiff's reasonable investment backed expectations of renting the Property are substantially diminished." (Id., ¶ 59.)

9.     This is insufficient as a matter of law.  See Nekrilov v. City of Jersey City, 528 F.Supp.3d 252, 272 (D.N.J. 2021) ("There is no question that Ordinance 19-077 adversely impacts the plaintiffs by denying them profits, or even profitability, from the short-term rental business.  Nevertheless, a regulation which merely 'adversely affect[s] economic values' is not sufficient to constitute a taking.") (citation omitted).  In Nekrilov, the district court observed that "[a] Takings claim requires more than an allegation that the plaintiff has carried on a

particular kind of business at the property and can no longer do so, or can no longer do so at a profit[,]" and ruled the plaintiffs failed to allege "sufficient facts to show a diminution in their property values sufficient to weigh in favor of a finding of a taking." 528 F.Supp.3d at 274. Under Nekrilov, PLAINTIFF's predictions of diminished Property value and rental business are insufficient.

10. As to the second element, Count I fails to allege the sort of diminution of reasonable investment-backed expectations that amounts to a taking. Even considering PLAINTFF's allegations set forth above, as well as PLAINTIFF's implied argument that, on the date PLAINTIFF purchased the Property, PLAINTIFF could rent to as many people as it could put into the Property, (Doc. 17, ¶ 41), such is insufficient as a matter of law. See Nekrilov, 528 F.Supp.3d at 276 ("[T]hose who do business in [a] regulated field . . . cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.") (internal quotation marks and internal citation omitted). The Amended Complaint acknowledges that CITY Ordinance 2018-01 was in effect when PLAINTIFF purchased the Property. (Doc. 17, ¶ 40.) Ordinance 2018-01 regulated the short term rental business. (Doc. 17-1 at 3.) The Ordinance expressly states that it "amend[s] [CITY's] code of ordinances." (Id.) In addition, Nekrilov noted that a "municipality may, for the general welfare, adjust and revise its prior regulations in light of experience," before finding in favor of the City of Jersey City

on the issue of interference with plaintiffs' distinct investment-backed expectations. 528 F.Supp.3d at 276-77. Here, the Ordinance's goals include "contribut[ing] to the stability of the City's existing residential neighborhoods as well as the health, safety, and welfare of the City's residents and guests . . . ." (Doc. 17-1 at 3.) The Ordinance recites the CITY's experience with short term rentals. (Id. at 1-3.) Under Nekrilov, the CITY could amend, adjust and revise its previous regulations to achieve the legislative end without any diminution of PLAINTIFF's reasonable investment-backed expectations. The Ordinance effected no taking.

11. As to the third element, Count I fails to allege the sort of character of governmental action that amounts to a taking. Here, PLAINTIFF alleges "the character of the Ordinance also directly impacts larger short term vacation rental properties because its occupancy use restriction applies only towards larger properties that have the ability to occupy more than twelve or ten persons." (Doc. 17, ¶ 61.) This is insufficient as a matter of law. See Nekrilov, 528 F.Supp.3d at 278 ("Ordinance 19-077 is a generally applicable public program seeking to adjust the benefits and burdens of economic life in order to promote the common good . . . . I find this factor cuts in favor of a finding that no taking has occurred."). Here, the Ordinance is, likewise, a generally applicable public program that seeks to adjust certain benefits and burdens in order to promote the common good. Under Nekrilov, the Ordinance effected no taking of the Property.

12.     Essentially, PLAINTIFF seems to contend it has a vested interest to rent to an unlimited, or at least unspecified, number of guests per night in the Property.  Florida courts, however, have found no such right in a slightly different property rights context.  See e.g. Mojito Splash, LLC v. City of Homes Beach, 326 So.3d 137, 143 (Fla. 2d DCA 2021) (affirming summary judgment against property owner under Bert Harris Act, and holding that plaintiff "never had a lawful right to use the property as a vacation rental for twelve overnight guests, let alone an unlimited number of occupants").

13.     Accordingly, the Court should dismiss Count I with prejudice.

**Count II**

14.     In Count II, PLAINTIFF seeks to allege a violation of its right to freedom of expression.  PLAINTIFF, however, fails to state a claim for violation of freedom of expression upon which relief can be granted.

15.     Count II rests upon the language in the Ordinance specifying the following statement shall be included in advertising for a vacation rental:

> You are vacationing in a residential area.  Please be a good neighbor by keeping the noise to a respectful level during the day and night. Excessive and unreasonable noise can deprive neighbors of the peaceful enjoyment of their private property.

(Doc. 17, ¶ 69.) (Citing to Ordinance § 1, at § 18-214(b).)

16.     Federal courts have refused to find "compelled speech" specified by a municipal ordinance violated the First Amendment in various circumstances.

Decisions by the Eighth Circuit in <u>Scope Pictures, of Missouri, Inc. v. City of Kansas City</u>, 140 F.3d 1201 (8th Cir. 1998) and the Fifth Circuit in <u>Roark & Hardee LP v. City of Austin</u>, 522 F.3d 533 (5th Cir. 2008) illustrate why the Ordinance, likewise, violates no freedom of expression rights of PLAINTIFF.

17.     In <u>Scope Pictures</u>, the appellants took issue with provisions of an ordinance that required adult entertainment establishment operators "to post approved signs containing information 'describing the risks and methods of transmission of venereal diseases and listing unsafe sexual activities' . . . and to make available to patrons approved pamphlets" containing information about various sexually-transmitted diseases.  140 F.3d at 1204.  In holding that such requirements did not violate the First Amendment, the Eighth Circuit observed it had "concluded that 'First Amendment protection against compelled speech . . . has been found only in the context of governmental compulsion to disseminate a particular political or ideological message.'"  <u>Id.</u> at 1205 (citation omitted).  Here, the Ordinance language about which PLAINTIFF complains contains no political or ideological message.  Under <u>Scope Pictures</u>, the Ordinance violates no freedom of expression rights of PLAINTIFF.

18.     In <u>Roark & Hardee</u>, a municipal ordinance specified that owners or operators of a "public place" who "fail[ ] to take *necessary steps* to prevent or stop another person from smoking in an enclosed area in a public place" thereby

violated the ordinance. 522 F.3d at 539 (emphasis in original). The ordinance expressly identified as necessary steps "posting 'no smoking' signs . . . ." Id. The plaintiffs complained the ordinance "compel[led] them to speak against their will by mandating verbal confrontation with their patrons—verbally requesting them to stop smoking and to leave the premises." Id. at 549. In concluding the ordinance did not violate the First Amendment, the Fifth Circuit noted "[t]the ordinance's goal is to prohibit smoking in enclosed public places . . . to protect the City's population from the harmful effects of second-hand smoke." Id. at 549-50. The Fifth Circuit observed that the ordinance required plaintiffs "take the 'necessary steps' to stop another person from smoking." Id. at 550. Finally, the Fifth Circuit stated "Thus, as a general matter, the ordinance regulates Plaintiffs' conduct, not speech. Plaintiff[s] . . . remain free to express whatever views they have on the ordinance." Id. The requirement (under amended guidelines promulgated by the City of Austin to clarify the "necessary steps" clause) that plaintiffs verbally request smokers to put out their cigarettes or leave the premises was "plainly incidental to the ordinance's regulation of conduct." Id. Here, the Ordinance's goals include "contribut[ing] to the stability of the City's existing residential neighborhoods as well as the health, safety, and welfare of the City's residents and guests . . . ." (Doc. 17-1 at 3.) Just as in Roark & Hardee, the Ordinance here "as a general matter . . . regulates Plaintiffs' conduct, not speech."

522 F.3d at 550.

19.     Legislative enactments, such as statutes and ordinances, "come clothed with a presumption of constitutionality" and "must be construed whenever possible to effect a constitutional outcome." Brinkmann v. Francois, 184 So.3d 504, 507-08 (Fla. 2016) (internal quotation marks and citation omitted).  In the context of a substantive due process challenge, "a legislative act of the government will not be considered arbitrary and capricious if it has a 'rational relationship with a legitimate general welfare concern.'" Gardens Country Club, Inc. v. Palm Beach County, 712 So.2d 398, 404 (Fla. 4th DCA 1998) (citations omitted).

20.     Here, similar to Gardens Country Club, the Ordinance's goals include "contribut[ing] to the stability of the City's existing residential neighborhoods as well as the health, safety, and welfare of the City's residents and guests . . . ." (Doc. 17-1 at 3.)

21.     PLAINTIFF contends that, under the Ordinance, "any advertisement for a vacation rental that does not contain [the statement at issue in Ordinance § 18-214(b)] is subject to a penalty." (Doc. 17, ¶ 69.)  Florida courts, however, have found that a minimal advertisement requirement does not burden or violate any freedom of expression rights.  See Management Properties, LLC v. Town of Redington Shores, 352 So.3d 909, 913 (Fla. 2d DCA 2022) (affirming judgment on

the pleadings in favor of Town in respect to Town's disclosure requirement).  In

Management Properties, the Second District Court of Appeal found the Town's

"interest in promoting compliance with the laws and regulations governing

vacation rentals suffices under any level of constitutional scrutiny, particularly in

light of the minimal burden imposed upon vacation rental operators, who are

simply required to pass along this information to their guests."  Id.

22.     Here, the Ordinance, likewise, only requires a property owner to pass

along information to renters.  Two of the sentences are factual, and the third is an

innocuous request for renters to be good neighbors.  (See Doc. 17-1, § 1, at § 18-

214(b).)

23.     Under the foregoing authorities, as a matter of law, the Ordinance

language at issue does not burden any right to freedom of expression.

Accordingly, this Court should dismiss Count II with prejudice.

**Count III**

24.     In Count III, PLAINTIFF seeks to allege an equal protection clause

claim.  PLAINTIFF, however, fails to state a claim for an equal protection violation

upon which relief can be granted.

25.     "[D]ifferent treatment of dissimilarly situated persons does not

violate the equal protection clause."  PBT Real Estate, LLC v. Town of Palm Beach,

988 F.3d 1274, 1285 (11th Cir. 2021) (internal quotation marks and citations

omitted). A plaintiff who is not a member of a constitutionally protected class "may bring an Equal Protection claim pursuant to one of two theories: (1) selective enforcement, or (2) class of one." AYDM Assocs., LLC v. Town of Pamelia, 205 F.Supp.3d 252, 265 (N.D.N.Y. 2016) (internal quotation marks and citation omitted). Here, no protected class is alleged.

26. A plaintiff asserting a selective enforcement claim must plead (1) the plaintiff was treated differently from other ***similarly situated*** individuals; ***and*** (2) such differential treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or the malicious or bad faith intent to injure a person. Lozman v. City of Riviera Beach, 39 F.Supp.3d 1392, 1411 (S.D. Fla. 2014). Alternatively, a "class of one" equal protection claim arises when a plaintiff does not allege membership in a class or group, but contends that he or she has been intentionally treated differently from others ***similarly situated*** without a rational basis for that differential treatment. Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

27. The Eleventh Circuit has held equal protection claims, like the one PLAINTIFF brings here, whether framed as selective enforcement or class of one, cannot survive without a similarly situated comparator. PBT, 988 F.3d at 1285; Young Apartments, Inc. v. Town of Jupiter, 406 F. App'x 376, 378 (11th Cir. 2020); Leib v. Hillsborough Cnty. Public Transp. Comm'n, 558 F.3d 1301, 1306-07 (11th

Cir. 2009) (affirming dismissal of complaint for failure to provide detail regarding a comparator). The "similarly situated" requirement is applied "with rigor" in the Eleventh Circuit, and the things being compared "must be <u>prima</u> <u>facie</u> identical in all relevant respects." <u>PBT</u>, 988 F.3d at 1285 (internal quotation marks and citation omitted). A plaintiff must show that it and any comparators are "similarly situated in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker." <u>Douglas Asphalt Co. v. Qore, Inc.</u>, 541 F.3d 1269, 1275 (11th Cir. 2008) (internal quotation marks and citation omitted). "[P]laintiffs are not permitted . . . to rely on broad generalities in identifying a comparator." <u>Leib</u>, 558 F.3d at 1307 (internal quotation marks and citation omitted).

28. Although the Seventh Circuit recognizes class of one claims in cases where illegitimate governmental conduct or animus is easily demonstrated, but similarly situated individuals are difficult to find, <u>see</u> <u>Swanson v. City of Chetek</u>, 719 F.3d 780, 784 (7th Cir. 2013), this approach has not been discussed or endorsed in the Eleventh Circuit. <u>Cf.</u> <u>Eisenberg v. City of Miami Beach</u>, 1 F.Supp. 3d 1327, 1341 (S.D. Fla. 2014) ("[S]ince <u>Geinosky</u>, the Eleventh Circuit has not specifically addressed the contention that certain factual scenarios . . . may not require a plaintiff to identify a comparator to state a claim for unequal treatment at the pleading state"); <u>accord</u> <u>JERMC Ltd. v. Town of Redington Shores</u>, No. 8:19-cv-

688-T-60AAS, 2020 WL 1974224, at *6 (M.D. Fla. Apr. 24, 2020) (dismissing equal protection claims because plaintiffs failed to allege existence of at least one similarly situated comparator and only generally alleged the treatment they received was different from others similarly situated); Rebalko v. City of Coral Springs, 552 F.Supp.3d 1285, 1322 (S.D. Fla. 2020) ("[T]he Eleventh Circuit has consistently dismissed 'class of one' claims when, as here, the complaint identifies no comparator.").

29.    Moreover, the Eleventh Circuit has drawn a necessary distinction between the sufficiency of alleged comparators where the challenged governmental decisions were one-dimensional (i.e., they involved a single answer to a single question) and those where the regulatory action was "multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time." Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1203 (11th Cir. 2007). In such contexts, like the case at bar, "the 'similarly situated' requirement will be more difficult to establish." 496 F.3d at 1204.

30.    Here, PLAINTIFF still identifies no comparators. While PLAINTIFF alleges owners who rented to a maximum of ten overnight occupants before the Ordinance are treated dissimilarly and better than those owners who rented to more than ten overnight occupants before the Ordinance, (Doc. 17, ¶ 82), this is

insufficient.  The owners who rented to a maximum of ten overnight occupants before the Ordinance and the owners who rented to more than ten overnight occupants before the Ordinance are dissimilar by reason of the amount of overnight occupants.  Indeed, paragraph 89 of the Amended Complaint states "the City has unlawfully isolated Plaintiff _**and**_ similarly situated property owners for distinct and harsher regulation . . . ."  (Doc. 17, ¶ 89.) (Emphasis added.)

31.     In any event, the Ordinance passes constitutional muster under a rational basis review.  Cf. Short Term Rental Owners Ass'n of Georgia, Inc. v. Cooper, 515 F. Supp. 3d 1331, 1347-48 (N.D. Ga. 2021) (stating "as the Eleventh Circuit and other federal courts interpreting similar ordinances have held, the Short-term Rental Ordinance is a rational and reasonable means to accomplish enhancing and maintaining the residential character of the community[,]" and holding plaintiffs failed to allege "plausible equal protection claim").

32.     Under the authorities cited above, Count III fails to state a cause of action.  Accordingly, this Court should dismiss Count III.

**Count IV**

33.     In Count IV, PLAINTIFF, citing the Fourteenth Amendment, alleges "vagueness" as a ground for declaratory relief.  (See Doc. 17 at 21-27, generally.) More specifically, in Count IV, PLAINTIFF takes issue with the phrase "common area" in the Ordinance.  (Doc. 17, ¶¶ 97-102.)  PLAINTIFF, however, fails to plead

ultimate facts demonstrating "vagueness" violative of constitutional protections.

34. "To succeed on vagueness grounds, 'the complainant must demonstrate that the law is impermissibly vague in all of its applications.'" Maages Auditorium v. Prince George's County, Maryland, 681 F. App'x 256, 264 (4th Cir. 2017) (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982)). "As long as a law 'establishes minimal guidelines to govern' officials and 'gives reasonable notice of the proscribed conduct,' it will survive a facial vagueness challenge." Maages, 681 F. App'x at 264 (citing Schleifer by Schleifer v. City of Charlottesville, 159 F.3d 843, 853 (4th Cir. 1998)). In Maages, in affirming summary judgment in favor of the County on the plaintiff's vagueness challenge, the Fourth Circuit noted that the challenged terms all had "readily ascertainable meanings based on context and dictionary definitions, which sufficiently guide zoning officials in the exercise of their authority." 681 F. App'x at 264. Florida law is to a similar effect. See State v. Brake, 796 So.2d 522, 528-29 (Fla. 2001) (noting that "where the exact meaning of a term was not defined in a statute itself, we have ascertained its meaning by reference to other statutory provisions, case law, or the plain and ordinary meaning of a word of common usage" and concluding "the dictionary definition of 'lawful' . . . helps to illuminate the statutory term").

35. "Common area" is phrase in common usage, and is not vague.

Black's Law Dictionary defines "common area," in the context of landlord-tenant law, as "The realty that all tenants may use though the landlord retains control and responsibility for it." <u>Common area</u>, <u>Black's Law Dictionary</u> (11th ed. 2019).

36.     One cannot reasonably interpret the Ordinance to mean that renters may sleep in a kitchen, a dining room, a bathroom, or a hallway.  In any event, only one common area in a property may be used for overnight occupancy of up to two additional persons.  (<u>See</u> Doc. 17-1, § 1, at § 18-216(a).)  As a result, if "common area" is interpreted to include, for example, two distinct rooms, such as a living room and a den, only one of such rooms can be used for overnight occupancy of up to two additional persons.  The vagueness, if any, in the meaning of the term "common area" is immaterial, since only one common area can be used for overnight occupancy under the Ordinance.  <u>Cf.</u> Judgment and Sentence, <u>State v. Dudek</u>, No. 312020 IN 000095 A, slip op. at 3 (19th Jud. Cir., Indian River County, Fla. Mar. 12, 2020) (docketed Mar. 13, 2020) ("The ordinance is not vague or overbroad and burdens only those that choose to enjoy the benefits of operating a short-term rental in a residential area, yet wish to amplify sound outdoors."). <u>Dudek</u> also noted "the ordinance appears to recognize the potential degradation of a residential community's quality of life caused by short-term leaseholders with little incentive to avoid disturbing the peace of neighbors[,]" before holding "the ordinance is a reasonable restriction on the use of the property and was properly

applied. . . ." Id.

37.     PLAINTIFF also complains, generally, to the effect that property owners must "comply with a voluminous set of evolving statutes, legislative enactments, case law, and all other forms of legal set of standards that have not been enacted or decided to date."  (See, e.g., Doc. 17, ¶¶ 107-122.)  PLAINTIFF, however, does not explain how having to comply with the law violates the Fourteenth Amendment.  To establish a procedural due process claim, "a plaintiff must allege first that [it] has a property interest as defined by state law and, second, that the defendants . . . deprived [plaintiff] of that property interest without constitutionally adequate process."  Thayre v. Town of Brookline, No. 20-cv-10510, 2021 WL 664042, at *3 (D. Mass. Feb. 19, 2021) (internal quotation marks and citation omitted).

38.     Here, PLAINTIFF has not expressly alleged that it has a property interest, defined by state law, to rent to more than ten overnight occupants.  (See Doc. 17 at 21-27, generally.)

39.     Even, however, if PLAINTIFF had alleged it possessed a property interest, defined by state law, to rent to more than ten overnight occupants, PLAINTIFF still failed to allege a deprivation of that property interest without constitutionally adequate process.  (See Doc. 17 at 21-27, generally.)  "[T]he essential requirements of procedural due process include adequate notice and an

opportunity to be heard at a meaningful time and in a meaningful manner." Thayre, 2021 WL 664042, at *4 (internal quotation marks and citation omitted). Thayre, a property owner who rented out rooms as short term rentals, failed to allege sufficient facts to state a procedural due process violation. Id. at *1, *6. In Thayre, the court noted, among other things, that Thayre's "case was presented by counsel at a hearing to appeal the Notice of Violation." Id. at *6. Here, no notice of violation, fine, or other penalty has been levied against PLAINTIFF; a procedural due process violation claim seems unripe at best. More importantly, the passing of the Ordinance is a legislative act. City of Pompano Beach v. Yardarm Restaurant, Inc., 509 So.2d 1295, 1297 (Fla. 4th DCA 1987) ("The enactment of an ordinance by a municipality is an exercise by an agency of its legislative function."). When government action is legislative, property owners are not entitled to procedural due process. 75 Acres, LLC v. Miami-Dade County, Florida, 338 F. 3d 1288, 1294 (11th Cir. 2003) ("[I]f government action is viewed as legislative in nature, property owners generally are not entitled to procedural due process.") This is because "[w]hen the legislature passes a law which affects a general class of persons, those person have all received procedural due process— the legislative process." Id. (internal quotation marks and citation omitted).

40. Accordingly, this Court should dismiss Count IV with prejudice.

**Count V**

41.     In Count V, PLAINTIFF seeks declaratory relief, alleging preemption under state law under sections 509.032(7) and 162.09, Florida Statutes.  (See Doc. 17 at 28-32, generally.)  Much of Count V involves PLAINTIFF's speculation as to what the Ordinance will do, such as PLAINTIFF's assertion the Ordinance "will effectively reduce the frequency of vacation rentals in Indian Rocks Beach" (Doc. 17, ¶ 133); "will effectively reduce the duration of Plaintiff's ability to rent the Property[,]" (id., ¶ 134); and "will decrease the frequency of vacation rentals." (Id., ¶ 136.)  PLAINTIFF also speculates that "It is far less likely a larger home with 5 plus bedrooms will be rented by groups of ten or less." (Id., ¶ 137.)

42.     PLAINTIFF fails to state a claim for preemption upon which relief can be granted.

43.     "In determining whether local laws and the actions of local government are in contravention of a state statute, courts look to whether the statute expressly preempts that area."  Eisenberg, 1 F.Supp. 3d 1327 at 1348. Further, "[i]mplied preemption should be found to exist only in cases where the legislative scheme is so pervasive so as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such as areas to be preempted by the Legislature."  Id. (internal quotation marks and citations omitted).

44.     While municipalities are barred from prohibiting vacation rentals or

regulating the duration or frequency of vacation rentals, they are not otherwise prevented from regulating short-term rentals. <u>See</u> Fla. Stat. § 509.032(7)(b) (2023).

45.     Florida courts have ruled there is no preemption in circumstances, such as in the case at bar. <u>See</u> <u>Management Properties</u>, 352 So.3d at 911 n.1 (affirming entry of judgment on the pleadings against plaintiff on preemption claim).

46.     Similarly, in an unreported decision, the circuit court in Flagler County, Florida found state law did not preempt a Flagler County ordinance regulating short term rentals. <u>See</u> Order on Pls.' Mot. for Preliminary Injunction, <u>30 Cinnamon Beach Way, LLC v. Flagler County</u>, No. 2015 CA 000167, slip op. at 21 (7th Jud. Cir., Flagler County, Fla. June 1, 2015) (docketed June 24, 2015) <u>per curiam</u> <u>affirmed</u> in <u>30 Cinnamon Beach Way, LLC v. County</u>, 183 So.3d 373 (Table), 2016 WL 194800 (Fla. 5th DCA Jan. 12, 2016).

47.     In <u>30 Cinnamon Beach Way</u>, the plaintiffs, a vacation rental company and a property management company, challenged the validity of a Flagler County ordinance enacting regulations regarding short-term vacation rentals. <u>Id.</u>, slip op. at 2. Plaintiffs alleged the Flagler County ordinance was preempted by Florida Statute section 509.032(7) (2014). <u>Id.</u>, slip op. at 6. Plaintiff filed an emergency motion for preliminary injunction in order to bring the preemption issue before the trial court. <u>Id.</u>, slip op. at 1. The trial court denied the plaintiffs' emergency

motion, finding that, with one limited exception, plaintiffs failed to establish that they were entitled to a preliminary injunction.  Id.  Among other things, in its Order on Plaintiffs' Motion for Preliminary Injunction, the trial court stated:

> [T]he Court cannot conclude that the State has by virtue of section 509.032(7)(a) completely preempted the field of regulating short-term vacation rentals, their inclusion in the definition of "transient public lodging" notwithstanding.  The 2014 amendment of section 509.032(7)(b) allows local governments to regulate short-term vacation rentals, so long as they do not prohibit them, regulate the duration of rentals, or regulate the frequency of rental . . . . To read section 509.032(7) any differently would render the Legislature's actions in amending the statute in 2011 and 2014 meaningless surplusage.

Id., slip op. at 10-11.

48.     Similarly, in Florida Gulf Coast Vacation Homes, LLC v. City of Anna Maria, No. 2016 CA 000629, 2016 WL 7647544, at *1 (12th Jud. Cir., Manatee County, Fla. Apr. 11, 2016), "the only issue for the Court to decide is whether Defendant's [City's] . . . Ordinance 15-807 . . . is preempted by Section 509.032(7), Florida Statute."  The trial court denied the plaintiff's motion for summary judgment, and granted the City of Anna Maria's motion for summary judgment, finding:

> [T]hat the Ordinance does not conflict with Section 509.032(7).  The Ordinance does not prohibit vacation rentals that have historically been rented to more guests than is permitted under the occupancy regulations set forth in the Ordinance.  The limitation on occupancy is a regulation that does not impinge in any way on the regulatory subjects of frequency or duration of rental as outlined in Section 509.032(7).  There, the regulation of the Ordinance is not in conflict with and is not preempted by Section 509.032(7).

Id.

49.     The Ordinance at bar does not prohibit vacation rentals and does not

regulate the duration or frequency of vacation rentals.  (See Doc. 17-1, § 1, at § 18-

216.)  Indeed, under the Ordinance, PLAINTIFF is free to rent out such properties

for as long as it likes, as often as it likes.

50.     PLAINTIFF, nevertheless, argues "[t]he City has opted-in to the

enforcement mechanisms of § 162.09[,]" Florida Statutes, in the Ordinance.  (Doc.

17, ¶ 142.)   PLAINTIFF argues that section 162.09 does not allow the rental

registration suspension or revocation specified in the Ordinance.  (Id., ¶ 143.)

PLAINTIFF asserts "the Ordinance is retrospective and authorizes penalties

without prior notice of violation or warning[,]" (id.), apparently referring to

Ordinance § 18-202 (c)-(d), and concludes that, as a result, section 162.09, Florida

Statutes, preempts the Ordinance.  (Id.)

51.     PLAINTIFF's argument fails because it materially conflicts with the

language of the Ordinance.  Where a cause of action is negated by the language of

a document attached as an exhibit to the complaint, the language of the document

will control and be grounds to dismiss.  Ship Const. & Funding Servs. (USA), Inc.

v. Star Cruises PLC, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001) (granting motion to

dismiss because breach of contract claim could not be reconciled with the express

terms of the contract).

52.     Here, PLAINTIFF's allegations conflict with the plain language of the Ordinance attached to the Amended Complaint. Rather than "opting-in," Ordinance § 18-202(b) states: "The Magistrate's decision whether to impose a fine and the amount of the fine shall remain subject to the provisions, considerations, and limitations set forth in Fla. Stat. 162.09 . . . ."  (Doc. 17-1, § 1, at § 18-202(b).)  Likewise, Ordinance § 18-202(c)-(d) contains no language applying the Ordinance retrospectively.  Ordinance § 18-202(c)-(d) on its face applies only upon a "***third*** adjudicated or admitted violation" (Doc. 17-1, § 1, at § 18-202(c)) (emphasis added) or a "***third*** imposed and legally sustained suspension[.]" (<u>Id.</u>, § 1, at § 18-202(d).) (Emphasis added.)

53.     As a matter of law, under <u>Management Properties</u>, <u>Ship Const. & Funding Servs. (USA)</u>, and the other cases cited, PLAINTIFF fails to state a cause of action for preemption.  Accordingly, this Court should dismiss Count V with prejudice.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

54.     I hereby certify that I spoke by telephone with PLAINTIFF's counsel, Rhett C. Parker on October 16th, 2023 in a good-faith attempt to resolve the matters herein before filing this Motion.  The parties were unable to resolve the issues.

WHEREFORE, for all the aforementioned reasons, DEFENDANT CITY respectfully requests this Court enter an order for the foregoing relief.

Respectfully submitted,

/s/ *Carlos A. Kelly*

Carlos A. Kelly, Esquire
Florida Bar No. 121274
Henderson, Franklin, Starnes & Holt, P.A.
1715 Monroe Street
Fort Myers, FL 33901
Telephone: (239) 344-1100
Facsimile: (239) 344-1200
carlos.kelly@henlaw.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of October, 2023, a true and correct copy of the foregoing was caused to be electronically filed, and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or my mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Carlos A. Kelly*

Carlos A. Kelly, Esquire
Florida Bar No. 121274